## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Massachusetts State Trooper, Sean P. Healy being duly sworn, hereby depose and say that:

1.      I am a member of the Massachusetts State Police ("MSP"), a position I have held since September, 2006.   I am currently assigned to the MSP Division of Investigative Services, Crime Gun Unit ("CGU"), which is also a working segment of the Bureau of Alcohol Tobacco and Firearms/Explosives ("ATF") Firearms Trafficking Task Force.   I am presently assigned to the ATF's Group 3 as a sworn Task Force Officer.   Prior to joining the Massachusetts State Police, I worked for the Norfolk County Sheriff's Office for approximately two (2) years.

2.      During my MSP career, I have conducted and participated in numerous investigations related to narcotics, the distribution of narcotics, drug trafficking, violations of the controlled substance act, larceny, breaking and entering, firearms violations, assaults involving dangerous weapons, intimidation, and various other crimes.

3.      I am submitting this affidavit in support of an Application for a Search Warrant, authorizing the search of 130A Eustis Street, Roxbury, MA (hereinafter, "the Target Location"). I submit that there is probable cause to believe that evidence of violations of the federal drug laws, 18 U.S.C. §922(g)(1) and 21 U.S.C. §§841(a)(1) and 846, exists in the Target Location, including, but not limited to, controlled substances, drug packaging materials and other paraphernalia, amounts of U.S. currency obtained as a result of illegal drug sales, and documents relating to controlled substances distribution, more fully described below in the section entitled "Items to be Seized."

4.      The statements contained in this affidavit are based on my own investigation,

1

work done by other agents involved in the investigation, and by reports and intercepts generated

during the investigation.   This affidavit is submitted for the limited purpose of establishing

probable cause for the requested search warrant, and therefore does not set forth all of the

information that I and other law enforcement personnel have obtained during the course of this

investigation.

## DESCRIPTION OF THE TARGET LOCATION

5.      130A Eustis Street, Roxbury, MA is a three-story townhome which is a part of a

group of affixed row apartments on Eustis Street in Roxbury.   This apartment is three stories in

height, with the first floor façade being gray in color and the second and third floor facades being

brick faced.   The number, "130A" is affixed to the apartment's front outer door.   A description

and photographs of the Target Location is attached hereto as Exhibit A.

## FACTS

6.      On June 14, 2017, a grand jury in the District of Massachusetts returned an

Indictment charging Andre Parham-Rankin with one count of distributing cocaine base within

1000 feet of a school in violation of 21 U.S.C. §§ 841and 860.   At the same time, a warrant was

issued for Parham-Rankin's arrest.

7.      Earlier this morning myself and other law enforcement officers arrived at Target

Location to effect the arrest of Parham-Rankin. Sgt. Hynes knocked on the door and was

eventually greeted by Parham-Rankin's mother, Pauline Parham, and his sister, Roneisha

Parham-Rankin. We advised Mrs. Parham of the arrest warrant for Andre Parham-Rankin, and

Pauline Parham demanded to see a copy of the arrest warrant, which was provided to her.

8.      We subsequently made entry into the apartment and went to the second floor rear

bedroom, which was locked.   Pauline Parham told Lt. Zani that he could not go in there.   When

asked by Sgt. Hynes whose room it was, she replied that it was "Andre's" room, but that he was

not there.   Pauline Parham swore "to God" that Andre was not in there and asked for us not to

break the door.   She claimed not to have a key.   Repeated knocks on the door, police

identifications, and demands for Andre to open the door went unanswered.

9.     Forced entry was then made, and Andre Parham-Rankin was immediately

observed lying on the bed.   He initially refused repeated orders to show his hands and comply

but was, nevertheless arrested after a struggle.   Once Parham-Rankin calmed down, he was

again advised of the warrant authorizing his arrest.

10.     What became apparent during the struggle was that Parham-Rankin had been

lying on numerous dollar bills (in varied denominations), his cell phone, a baggie holding some

pills and what I estimated to be about a quarter pound of marijuana in a baggie.   An even larger

baggie of suspected marijuana was on his bureau.   A box of baggies was on top of the other

bureau.   All of these items were in open and plain view.

11.     Based on this discovery, we directed Parham-Rankin's removal from the address

and secured the apartment pending the application and issuance of a search warrant.   Both

Pauline Parham and Roneisha Parham-Rankin were updated regarding this situation and were

allowed to make arrangements accordingly.

## DRUG TRAFFICKERS' USE OF RESIDENCES GENERALLY

12.     Based upon my training and experience, as well as the training and experience of

other law enforcement agents I have worked with, I am aware that it is generally a common

practice for individuals who distribute controlled substances to maintain in their residences

drugs, drug paraphernalia and records relating to their drug trafficking activities.   The items

seen upon entering the Target Location is evidence that it has been used for these purposes.

     13.     Because individuals who distribute controlled substances in many instances will

"front" (that is, sell on consignment) drugs to their clients, or alternatively, will be "fronted"

drugs from their suppliers, such record-keeping is necessary to keep track of amounts paid and

owed, and such records will also be maintained close at hand so as to readily ascertain current

balances.   Often individuals who distribute controlled substances keep "pay and owe" records to

show balances due for drugs sold in the past ("pay") and for payments expected ("owe") by the

trafficker's suppliers and the trafficker's dealers.   Additionally, individuals who distribute

controlled substances must maintain telephone and address listings of clients and suppliers and

keep them immediately available in order to efficiently conduct their drug trafficking business.

     14.     Based upon my training and experience, I am also aware that it is generally a

common practice for distributors of controlled substances to conceal at their residences sums of

money, either the proceeds from drug sales or monies to be used to purchase controlled

substances.   In this connection, drug traffickers typically make use of wire transfers, cashier's

checks, and money orders to pay for controlled substances.   Evidence of such financial

transactions and records relating to income and expenditures of money and wealth in connection

with drug distribution would also typically be maintained in residences.

     15.     I have participated in the execution of numerous search warrants at the residences

of individuals who distribute controlled substances.   In a substantial number of residential

searches executed in connection with the drug investigations in which I have been involved,

drug-related evidence have typically been recovered, including controlled substances, controlled

substances paraphernalia, and documents related to controlled substances distribution, such as

books, records, receipts, notes, ledgers, and other papers relating to the purchase and/or

distribution of controlled substances; cash, currency, and records relating to controlled

substances, income and expenditures of money and wealth; documents indicating travel in

interstate and foreign commerce.   I am also aware that drug traffickers frequently possess and

use firearms to protect their illegal drug businesses and store those weapons in their residences.

16.     In addition, during the course of such residential searches, I and other agents have

also found items of personal property that tend to identify the person(s) in residence, occupancy,

control, or ownership of the subject premises.   Such identification evidence is typical of the

articles people commonly maintain in their residences, such as cancelled mail, deeds, leases,

rental agreements, photographs, personal telephone books, diaries, utility and telephone bills,

statements, identification documents, and keys.

17.     My awareness of these drug distribution practices, as well as my knowledge of the

drug use and distribution techniques as set forth in this Affidavit, arise from the following:

a)      my own involvement in prior investigations and searches during my career
        as a law enforcement officer, as previously described;

b)      my involvement on a number of occasions in debriefing confidential
        informants and cooperating individuals in prior investigations, as well as
        what other law enforcement agents and officers have advised me when
        relating the substance of their similar debriefings and the results of their
        own drug investigations; and,

c)      other information provided through law enforcement channels.

## ITEMS TO BE SEIZED

18.     Based upon all of the information I have obtained during the course of this investigation, and for the reasons more specifically set forth above, I submit that there is probable cause to believe that evidence regarding illegal drug activities will be found in the Target Location.   More specifically, I submit that there is probable cause to believe that the following items of evidence will be found in the subject premises:

1.    Any controlled substances, paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, items for bundling and heat-sealing;

2.    Cash, U.S. currency; books and papers reflecting debts and collections relating to monies owed or due for the distribution of controlled substances; and records relating to controlled substances income and expenditures of money and wealth, such as money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers, safety deposit box keys and deeds to real property;

3.    Books, records, receipts, notes, ledgers, and other papers relating to the distribution of controlled substances;

4.    Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances;

5.    Any and all firearms, ammunition, ammunition feeding devices, cartridges, cartridge cases, paperwork reflecting the receipt and sale of firearms, original boxes for firearms, holsters, cleaning kits and supplemental firearm devices such as silencers and/or laser sights or any other items related to firearms.

6.    Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the Target Location including but not limited to canceled mail, deeds, leases, rental agreements, photographs, utility and telephone bills, identification documents, and keys.

These items are also fully described in attachment B.

## CONCLUSION

19.   Based upon the foregoing, and based upon my training and experience, I submit that there is probable cause to believe that the Target Location located at 130 A Eustis Street Roxbury, MA, which are more specifically described above, presently contain the items set forth above, and that those items constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, things otherwise criminally possessed, and property designed or intended for use or which is or has been used as the means of committing a criminal offense, specifically, violations of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. §922(g)(1). Accordingly, I respectfully request that a search warrant be issued for the seizure of these items in the subject premises described above.

_____
MASSACHUSETTS STATE TROOPER SEAN P. HEALY
TASK FORCE OFFICER
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
EXPLOSIVES


Subscribed and sworn to
before me, this 15th day
of June, 2017.

_____
JUDTIH G. DEIN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS